# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GARY REDNOUR,

        Petitioner,      :    Case No. 3:14-cv-273

  - vs -                         District Judge Walter Herbert Rice
                                    Magistrate Judge Michael R. Merz

WARDEN, London Correctional
  Institution,

                                  :

        Respondent.

# REPORT AND RECOMMENDATIONS

Petitioner Gary Rednour brought this habeas corpus action *pro se* to obtain relief from his conviction in the Montgomery County Common Pleas Court for murder and felonious assault (Petition, Doc. No. 1, PageID 1.) The case is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part: "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Rednour pleads the following grounds for relief:

> **Ground One**: Where an interrogation subject states he wishes to stop talking and the police continue to question him in a manner designed to elicit an incriminating response, and resulting information must be suppressed pursuant to the Fifth Amendment right to be free from compelled self-incrimination.
>
> **Supporting Facts:** During the interrogation the defendant told the officers that he did not want to talk anymore. All three times the police continued. Thereby violating his right to remain silent.

1

>**Ground Two:** Where counsel fails to adequately lay foundations for crucial cross-examination and fails to challenge the state time line, and defense is prejudiced by such failures, the Sixth and Fourteenth Amendments are violated.
>
>**Supporting Facts:** Defendant's counsel failed to properly challenge the timeline proffered by the state, which in this case largely infringed on the defendant['s] right to counsel and right to trial.
>
>**Ground Three**: Where there is an absence of sufficient competent and credible evidence to prove each essential element of a charged offense by proof beyond a reasonable doubt any resulting conviction is violative of due process of law.
>
>**Supporting Facts**: The State's case lacked substantive evidence to link defendant to the murder or support motive, along with any such evidence that could be used to convict a defendant of a crime. The state relied on non-credible testimony of a jailhouse snitch.
>
>**Ground Four:** Where a prosecutor in a criminal case makes improper comments which deprive the defendant of a fair trial, due process of law is violated.
>
>**Supporting Facts:** The prosecutor went beyond the bounds of the evidence by pressing the jury to believe that the evidence suggest[s] that the victim was sexually assaulted despite a complete absence of any evidence to support such an counsel was ineffective for failing to raise the issue on direct appeal.

(Petition, Doc. No. 1, PageID 6-7.)

**Procedural History**

Rednour was indicted by the Montgomery County Grand Jury and convicted on March 5, 2012, on one count of murder and one count of felonious assault. He pled not guilty and the case was tried to a jury, resulting in convictions on both counts and a sentence of fifteen years to life. The Second District Court of Appeals affirmed the convictions, but remanded for correction of a

sentencing matter not at issue in the instant case. *State v. Rednour,* 2013-Ohio-2125, 2013 Ohio App LEXIS 2026 (2nd Dist. May 24, 2013). The Ohio Supreme Court declined to exercise jurisdiction over a further appeal. *State v. Rednour*, 137 Ohio St. 3d 1414 (2013). The instant habeas petition followed.

# Analysis

**Ground One:  Denial of Fifth Amendment Privilege Against Self-Incrimination**

In his First Ground for Relief, Rednour claims his incriminating statements to the police should have been suppressed because admitting them violated his Fifth Amendment privilege against self-incrimination.

Rednour raised this claim as part of his First Assignment of Error on direct appeal. The Second District decided the claim as follows:

> A. The August 30, 2010 Interrogation
>
> **[*P33]** As a preliminary matter, we note that in ruling on motions to suppress, "the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist. 1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (1972). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id*.
>
> **[*P34]** After hearing the evidence at the suppression hearing and viewing the videotape of the August 30, 2010 interrogation, the trial court concluded that Rednour's constitutional rights were not

violated because Rednour did not unambiguously articulate that he intended to remain silent or to end the interview. In particular, the trial court focused on the fact that, although Rednour stated that he wanted to stop the interview, he continued to talk. He even talked over police at times.

**[\*P35]** In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the United States Supreme Court rejected a "per se proscription of indefinite duration" of further questioning once a person in custody indicates a wish to remain silent. *Id.* at 103. The Court noted that:

> A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt "fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored . . . ." 384 U.S., at 479, 86 S.Ct., at 1630. The critical safeguard identified in the passage at issue is a person's "right to cut off questioning." *Id*., at 474, 86 S.Ct., at 1627. Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored." (Italics supplied.)

*Mosley* at 103-104, quoting *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**[\*P36]** The Supreme Court subsequently held in *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." (Emphasis in original.) *Id*. at 459. Instead, "the suspect must unambiguously request counsel." *Id*.

**[\*P37]** In *State v. Murphy*, 91 Ohio St.3d 516, 2001 Ohio 112, 747

N.E.2d 765 (2001), the Supreme Court of Ohio concluded that the ruling in *Davis* also applies to the right to remain silent. *Id*. at 520. In this regard, the Supreme Court of Ohio observed that "'[E]very circuit that has addressed the issue squarely has concluded that *Davis* applies to both components of *Miranda*: the right to counsel and the right to remain silent.'" *Id*., quoting *Bui v. DiPaolo*, 170 F.3d 232, 239 (1st. Cir.1999). The Supreme Court of Ohio also stressed that:

> Although a suspect "need not 'speak with the discrimination of an Oxford don,'" *Davis*, 512 U.S. at 459, 114 S.Ct. at 2355, 129 L.Ed.2d at 371, quoting *id*. at 476, 114 S.Ct. at 2364, 129 L.Ed.2d at 382 (Souter, J., concurring in judgment), a suspect "must articulate his or her desire to remain silent or cut off questioning 'sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be' an invocation of the right to remain silent." *State v. Ross* (1996), 203 Wis.2d 66, 78, 552 N.W.2d 428, 433, quoting *Davis*, 512 U.S. at 459, 114 S.Ct. at 2355, 129 L.Ed.2d at 371; *see, also, United States v. Mikell* (C.A.11, 1996), 102 F.3d 470, 476. If the suspect says something that may or may not be an invocation of the right, police may continue to question him; they need not treat the ambiguous statement as an invocation or try to clear up the ambiguity. (Citations omitted.) (Italics supplied.)

*Murphy* at 520.

**[\*P38]** We have listened to the entire videotape of the August 30, 2010 police interview, which begins with Rednour's assertion at the very beginning that he wanted a lawyer and did not wish to speak with the police. However, the parties stipulated at the suppression hearing that this initial invocation of the right to remain silent was cured by the detectives' actions in explaining Rednour's rights. After the explanation, Rednour signed the waiver form and agreed to speak with the detectives.

**[\*P39]** After about 35 minutes of questioning, Rednour indicated that he thought he should "shut his mouth." However, immediately after making this statement, Rednour continued talking freely to the detectives. Next, around the 49-minute mark, Rednour stated that he was "done talking," because the officers had made up their minds. Again, despite having made this statement, Rednour continued freely talking to the officers.

5

>**[\*P40]** At around the 52-minute mark in the videotape, Rednour again invoked his right to counsel and to remain silent. The parties also stipulated at the suppression hearing that Rednour had invoked his right to counsel at this latter point, and that no part of the tape after that point could be used at trial, other than for impeachment purposes.
>
>**[\*P41]** In *Murphy*, the suspect stated that, "I'm ready to quit talking *and I'm ready to go home, too*." (Emphasis in original.) *Murphy*, 91 Ohio St.3d at 521, 747 N.E.2d 765. The Supreme Court of Ohio concluded that the suspect had not unequivocally asserted his right to remain silent. Instead, the court reasoned that "What appellant appears to have wanted was to be released. Talking to the police was a means to that end; he was trying to persuade them that he was innocent. Thus, his words did not necessarily mean that he wanted to stop talking, no matter what. If the police were not ready to let him go, he may well have wanted to keep trying to persuade them of his innocence." *Id*.
>
>**[\*P42]** The same observations apply to the case before us. Rednour's statements indicate that his desire to stop speaking was based on the fact that the officers did not believe him and appeared to have made up their minds. The context of the discussions that occurred afterward indicate that Rednour continued to attempt to persuade the officers that he was innocent and had nothing to do with the murder. Accordingly, the trial court did not err in concluding that Rednour's statements were ambiguous and did not require the detectives to stop questioning.

*State v. Rednour*, 2013-Ohio-2125, 2013 Ohio App. LEXIS 2026.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Once a defendant has been given his *Miranda* warnings, he needs to invoke his right to

remain silent to cut off interrogation; if he does not do so and later makes an admission, it is admissible against him. *Berghuis v. Thompkins*, 560 U.S. 370 (2010).  In addition, the Second District's interpretation of Rednour's comments as being ambiguous about invoking his right to counsel are entitled to deference, especially since they viewed the relevant video.

The Second District's decision on the *Miranda* issue is neither contrary to nor an objectively unreasonable application of *Miranda* and its progeny in the Supreme Court.  The First Ground for Relief should therefore be dismissed with prejudice on the merits.

**Ground Two:  Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Rednour claims he received ineffective assistance of trial counsel when his attorney did not properly challenge the State's timeline.  This claim was raised as the Third Assignment of Error on direct appeal and the Second District held:

> **[\*P62]** Rednour's Third Assignment of Error states that:
>
> Appellant Was Denied His Constitutionally Guaranteed Right to Effective Assistance of Counsel When Trial Counsel Failed to Properly Lay a Foundation for Impeaching a State's Witness and Properly Challenging the Time-Line of State's Witnesses.
>
> **[\*P63]** Under this assignment of error, Rednour contends that trial counsel was ineffective during an attempt to impeach the testimony of a witness, Joseph McLaughlin. Specifically, defense counsel asked Detective Gaier about statements McLaughlin had made, rather than asking McLaughlin about the point during cross-examination.
>
> **[\*P64]** Rednour also argues that defense counsel was ineffective by failing to lay an evidentiary foundation during cross-examination of key prosecution witnesses, which would allegedly have established inconsistencies in the timeline of events. According to Rednour, this failure caused prejudice because the

issue of "when" Rednour and Paradiso were seen together was crucial to the State's case.

**[\*P65]** "In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.*" *State v. Matthews*, 189 Ohio App.3d 446, 2010 Ohio 4153, 938 N.E.2d 1099, ¶ 39 (2d Dist.).

**[\*P66]** According to the coroner, Paradiso's state of rigor mortis was consistent with Paradiso having died on Saturday, March 13, 2010, during the early morning hours, or on Friday evening, March 12, 2010. At trial, McLaughlin, the security guard at Food Time Market, testified that he had seen Rednour and Paradiso together three times at the store on March 12, 2010, with the last time being around 6:30 p.m.

**[\*P67]** Detective Gaier interviewed McLauglin on March 16, 2010. During Gaier's cross-examination, defense counsel asked Gaier if March 12, 2010 were the same date that he had put in his report regarding his interview of McLaughlin. Trial Transcript, Volume VI, p. 725. The State objected on grounds that this was improper impeachment, because the defense failed to lay a foundation with McLaughlin. In response to the objection, defense counsel made the following statement:

> "Your honor, with respect to the impeachment, Mr. McLauglin's testimony is what it is.
>
> My issue is more regarding credibility that deals with Detective Gaier's recollection of events and corrections (indiscernible) made." *Id*. at p. 726.

**[\*P68]** After the trial court sustained the objection, defense counsel moved on to other matters and did not proffer the police report. The police report was not admitted at trial, and there is no evidence about what the report specifically said. As a result, we have no basis upon which to conclude that the evidence would have been relevant. *See, e.g., State v. Payne*, 2d Dist. Greene No. 95-CA-49, 1996 Ohio App. LEXIS 760, 1996 WL 86229, \*4 (March 1, 1996) (noting that an appellate court cannot speculate on

8

> the content of evidence, where the record is "completely devoid of any indication of the content of the testimony or the documentary evidence * * *.")
>
> **[*P69]** The second ground for the ineffective assistance of counsel claim relates to defense counsel's alleged failure to effectively establish that the evidence linking Paradiso and Rednour was inconsistent and flawed. As was noted, the coroner could not estimate the precise time of death, but stated that the rigor mortis findings were consistent with Paradiso having died in the early morning hours of March 13, 2010, or on the night of March 12, 2010.
>
> **[*P70]** Contrary to her usual practice, Paradiso did not return to her room at the YWCA before curfew, and the last time Paradiso's roommate saw her was on the morning of March 12. The security guard saw Paradiso and Rednour three times on March 12, with the last time being 6:30 p.m. He never saw either Paradiso or Rednour after that — once again, contrary to the usual course of events, as he had seen them both in the store consistently over the past month.
>
> **[*P71]** Artis Allen, who lived across the street from the house where Rednour had been staying, placed both Paradiso and Rednour on the front porch of Rednour's house on the night of either Friday, March 12, or Saturday, March 13, between 10:30 p.m. and midnight. Allen had also seen them both together twice earlier that day, once at Food Time Market, and once at UDF.
>
> **[*P72]** The above testimony is not inconsistent, nor is it flawed. Even if Allen could not pinpoint whether he saw the couple together on Friday or Saturday night, that would not assist Rednour — because the other evidence indicates that Paradiso was murdered on one of those days. The critical point is that Rednour was the last person seen with Paradiso when she was alive, and there was no dispute about this fact.
>
> **[*P73]** Accordingly, we see no error or lapse on the part of defense counsel's representation. The Third Assignment of Error is overruled.

*State v. Rednour, supra.*

On this Assignment of Error as well as the First, the Second District applied the correct federal standard as enunciated in *Strickland v. Washington, supra.* Rednour has shown no error

9

in that application, particularly given the DNA evidence linking him to the body of the deceased. The Second Ground for Relief should be dismissed with prejudice.

**Ground Three: Insufficient Evidence**

In his Third Ground for Relief, Rednour asserts he was convicted on insufficient evidence. This states a claim for relief under the Fourteenth Amendment, which requires that a criminal conviction be supported by sufficient evidence on every element of the crime. *Jackson v. Virginia*, 443 U.S. 307 (1979).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam)*.

Rednour raised insufficient evidence as his Fifth Assignment of Error on direct appeal. The Second District decided that assignment as follows:

> **[\*P82]** Under this assignment of error, Rednour contends that the trial court erred in overruling his motion for acquittal, because there was no credible evidence to support the charges against him. We disagree.
>
> **[\*P83]** "Sufficiency and manifest-weight challenges are separate and legally distinct determinations." *State v. Hatten*, 186 Ohio App.3d 286, 2010 Ohio 499, 927 N.E.2d 632, ¶ 17 (2d Dist.), citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. "'While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion.'" *Hatten* at ¶ 17, quoting *State v. Adelman*, 9th Dist. Summit No. 18824, 1998 Ohio App. LEXIS 5849, 1998 WL 852565, \*7 (Dec. 9, 1998).

11

**[\*P84]** We noted in *Hatten* that:

> A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. Under a sufficiency analysis, an appellate court does not make any determinations regarding the credibility of witnesses. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. (Citations omitted.)

*Hatten* at ¶ 18.

**[\*P85]** Rednour was charged in Count One of the indictment with having caused death to another while committing Felonious Assault in violation of R.C. 2903.11(A)(1). That statute provides, in pertinent part, that "No person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn * * *." Count Two charges Rednour with having knowingly caused serious physical harm to another in violation of the same statute, R.C. 2903.11(A)(1).

**[\*P86]** After viewing the evidence in a light most favorable to the State, we conclude that any rational trier of fact could have found the essential elements of these crimes proven beyond a reasonable doubt. As was noted, the State submitted significant amounts of evidence connecting Rednour to the crime, and Rednour's statements were inconsistent and frankly, gave the appearance of being untruthful. The trial court, therefore, did not err in overruling Rednour's motion for acquittal.

**[\*P87]** Rednour's Fifth Assignment of Error is overruled.

*State v. Rednour, supra.*

The evidence recited by the Second District clearly supports this finding. Rednour was the last person seen with the victim while she was alive and was recognized with her in short walking distance from the place where her body was found. There is no doubt that she was intentionally killed. The only issue is identity and Rednour's DNA was found on her breast. All of this is completely apart from Rednour's confession in jail to another inmate and the inconsistencies in his own statements to the police.

The Second District's decision is an objectively reasonable application of *Jackson v. Virginia*. It is therefore entitled to deference and the Third Ground for Relief should be dismissed with prejudice.

**Ground Four: Prosecutorial Misconduct**

In his Fourth Ground for Relief, Rednour accuses the prosecutor of misconduct in suggesting to the jury that the victim had been sexually assaulted and that his appellate attorney provided ineffective assistance of counsel by not raising this claim on direct appeal.

Rednour does not say what it is the prosecutor said which suggested sexual assault, but such a suggestion would not have amounted to prosecutorial misconduct because (1) Rednour's DNA was found on the victim's breast and (2) Rednour admitted sexually assaulting the victim to the inmate witness.

Apart from the lack of merit in this claim, it is also procedurally defaulted because it was not raised on direct appeal and could have been because any prosecutor comments would appear on the face of the record on appeal. This means pursuing it after direct appeal is barred by Ohio's criminal *res judicata* rule. That doctrine, enunciated in *State v. Perry,* 10 Ohio St. 2d

13

175 (1967), is an adequate and independent state ground. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Rednour attempts to excuse failure to raise it on direct appeal by asserting he received ineffective assistance of appellate counsel when it was not raised. However, ineffective assistance of appellate counsel as excusing cause for a procedural default must first be raised in the state courts by the appropriate remedial vehicle. *Edwards v. Carpenter*, 529 U.S. 446 (2000). In Ohio that is an Application for Reopening the Direct Appeal under Ohio R. App. P. 26(B). Rednour has not filed such an application and the time within which he could have done so has expired.

Ground Four should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

August 18, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).